### JULIA E. WOODCOCK v. J. B. BOSTIC.

*Mortgagor and Mortgagee — Purchasers of Equity of Redemption—Action on Agreement of Purchaser of Mortgaged Land to Pay the Mortgage Debt when Assigned to Stranger—Parties not Privy to Contract*

1. The purchaser of land subject to mortgage, who assumes the payment of the mortgage debt, becomes, as between himself and his vendor, the principal debtor, and the liabilty of the vendor (mortgagor) as between the parties is that of surety.

2. In equity, a creditor may have the benefit of all collateral obligations for the payment of the debt, which a person standing in the relation of a surety for others holds for his indemnity, and hence the assignee of a mortgage debt which has been assumed by the purchaser of the equity of redemption may, in foreclosure proceedings, have a deficiency judgment against such purchaser by praying for the equitable relief of subrogation.

3. The written assumption of the mortgage debt by the purchaser of the equity of redemption in land, and his agreement with the mortgagor and mortgagee to pay the same, are entirely personal to such mortgagor and mortgagee, and cannot be assigned to the purchaser of the mortgage debt so as to enable him to maintain an independent action at law upon it.

CIVIL ACTION, heard on complaint and demurrer, before *Graham, J.,* at March Term, 1895, of BUNCOMBE Superior Court.

The complaint, after alleging the execution of a note for $5,500 by defendant, D. D. Suttle, to the defendant, J. B. Bostic, secured by deed of trust, its assignment for value to the plaintiff, and its non-payment, further set out :

" 3. That on the 6th day of February, 1892, the defendant, J. M. Ray, contracted in writing with the defendant, J. B. Bostic, for a valuable consideration, to pay the said note to the plaintiff, and to protect and save the defendants, Bostic and Suttle, from any and all liability by reason of and arising out of the same, which said contract was transferred and delivered to the plaintiff by the defendants, J. B. Bostic and D. D. Suttle, and is in words and figures as follows, to-wit :

" This contract, made and entered into this the 6th day of February, 1892, by and between J. M. Ray, of the county and State aforesaid, and J. B. Bostic of said county and State.

" WITNESSETH :

" That whereas the said J. B. Bostic and D. D. Suttle are indebted to Mrs. J. E. Woodcock in the sum of fifty-five hundred dollars, which said sum is secured by a deed of trust upon the land conveyed by E. H. Wright and wife to said J. M. Ray by deed bearing date the _____ day of

----------, 1892 ; and whereas the said Ray has purchased said land subject to said deed of trust and assumes and agrees to pay the said debt ;

" Now therefore, for and in consideration of the sum of ten dollars to him in hand paid by the said J. B. Bostic, the said J. M. Ray does hereby assume and agree to pay the aforesaid debt of Mrs. Julia E. Woodcock, and further agrees to protect and save the said J. B. Bostic and D. D. Suttle from any and all liability by reason of or from the same.

" In testimony whereof the said J. M. Ray has hereto set his hand this day and date first above written.

                    " (Signed)       JAMES M. RAY."

" That the said defendants, Bostic and Suttle, having failed to pay the interest upon the said note as the same became due and payable, at and before the commencement of this action, the said note and every part thereof became due, and the said defendant, James M. Ray, by virtue of his said contract, became indebted to the plaintiff the amount of said note, to-wit : the sum of five thousand five hundred dollars, with interest on the same from the 2d day of February, 1893, no part of the said note having been paid, save and except the interest on said note from the 2d day of August, 1890, up to the 2d day of February, 1893.

" Wherefore the plaintiff prays judgment for the sum of five thousand five hundred dollars, with interest on said sum at 8 per cent. from the 2d day of February, 1893, and interest on the sum of two hundred and twenty dollars from the 2d day of August, 1892, until paid, and the costs of this action."

The demurrer was as follows :

" The said complaint does not state facts sufficient to constitute a cause of action against the said James M. Ray in that :

" 1. The cause of action therein undertaken to be alleged is founded upon an alleged contract which was executed between this defendant and his co-defendant, J. B. Bostic, only, to which the plaintiff was not a party and under which she could not claim anything.

" 2. No contract is alleged to have been entered into between the plaintiff and this defendant, or to which the plaintiff and this defendant were both parties.

" 3. No consideration is alleged to have passed from the plaintiff to this defendant as the foundation of any contract between them or to which they were both parties ; and no contract under seal is alleged to have been executed between them or to which they were both parties.

" 4. The contract alleged in said complaint upon which this defendant is sought to be charged is therein stated to have been entered into only between this defendant and his co-defendant, J. B. Bostic, and D. D. Suttle and plaintiff were not parties.

" 5. That the contract alleged in the complaint aforesaid is not one which could be assigned to the plaintiff.

" 6. That the contract alleged in the complaint aforesaid as having been entered into between the defendant and his co-defendant, J. B. Bostic, is a contract of indemnity or guaranty to his said co-defendants and could not be assigned to the plaintiff.

" 7. That no cause of action is stated in said complaint in behalf of the plaintiff against this defendant, in that it is simply in said complaint alleged against this defendant, upon the contract charged to have been executed by him, that this contract was one entered into between this defendant and his co-defendant, J. B. Bostic, only, for the purpose of indemnifying, guaranteeing and saving harmless said J. B. Bostic and D. D. Suttle from any liability to the plaintiff on another and previous contract or other

and previous contracts alleged to have been entered into between the plaintiff and said J. B. Bostic and D. D. Suttle to which this defendant was not a party."

His Honor overruled the demurrer and defendant, J. M. Ray, appealed.

*Messrs. Jones & Barnard,* for plaintiff.
*Mr. F. A. Sondley,* for defendant, J. M. Ray (appellant).

MONTGOMERY, J.: On the 2nd of August, 1890, J. B. Bostic conveyed to D. D. Suttle a tract of land for the price of $5,500. Suttle at the same time executing his bond for the purchase money and securing the same by a deed of trust on the land. Bostic assigned the bond to the plaintiff, Julia E. Woodcock, for value. Afterwards the defendant Ray became the purchaser of the land from Suttle or his grantee, and entered into a written agreement with Bostic and Suttle in which he, after reciting the indebtedness of Bostic and Suttle to the plaintiff, and declaring that it was secured by a deed of trust upon the land which he had bought subject to the same, assumed and agreed with Bostic and Suttle to pay the aforesaid debt of Julia E. Woodcock, and also to protect and save Bostic and Suttle from any and all liability by reason of or from the same. Bostic and Suttle assigned and transferred this assumption and guaranty to the plaintiff.

This action was commenced by the plaintiff against the defendant upon his assumption and guaranty. It is in form an action *ex contractu.* The bond of Suttle to Bostic, which Bostic assigned to the plaintiff, is only mentioned in the complaint as a recital to explain what was the exact amount of defendant's assumption and that the debt was still due. The trustee named in the deed which secured the bond is not a party to the action, nor is there

any prayer for a foreclosure of the trust, and for a personal judgment against the defendant Ray, for any deficiency. Neither is there any equitable subrogation invoked, by which the assumption of the defendant might be subjected to the satisfaction of the bond. This action is under the old form of assumpsit, and is against the defendant on his promise made to Bostic and Suttle under their assignment of the same to the plaintiff. The plaintiff insists that she can recover both on the assignment of Bostic and Suttle to her of the defendant's assumption and on the broad ground that the defendant is liable to her directly, even if the assignment of the assumption of the defendant had not been made to her by Bostic and Suttle, because of the promise made by the defendant to Bostic and Suttle to pay her debt. We will discuss the last proposition first.

The proposition is that, at law, a third person may maintain an action upon the promise of one person to another for the advantage and benefit of the third. There is conflict of judicial opinion on the question. The affirmative is held in many of the states, including New York. *Burr* v. *Beers*, 24 N. Y., 178. In others of the states, including North Carolina, the contrary is held. *Peacock* v. *Williams*, 98 N. C., 324; *Morehead* v. *Wriston*, 73 N. C., 398. But the plaintiff insists further that Suttle ought to be considered a mortgagor and the defendant Ray a vendee who has purchased and agreed to pay the mortgage debt to Bostic, the latter to be considered a mortgagee; and that between them Bostic has become the surety, and Ray the principal debtor, and that the plaintiff stands in the shoes of Bostic by virtue of his assignment of his bond to her, and that therefore she ought to be subrogated to the rights of Bostic, and have the assumption of Ray subjected to the payment of the plaintiff's debt. This is a sound principle

of equity. In New Jersey and Massachusetts it has been held that the liability of the grantee of a mortgagor who has promised and assumed to pay the mortgage debt can be enforced in equity by the mortgagee or his assignee by the application of the principle of equitable subrogation. *Hayden* v. *Snow*, 14 Fed. Rep., 70. In the case of *Keller* v. *Ashford*, 133 U. S., 610, the same principle is declared, and Mr. Justice GRAY, who delivered the opinion, quoted with approval from *Cromwell* v. *St. Barnabas Hospital* (N. J. Court of Errors) as follows : " The right of a mortgagee to enforce payment of the mortgage debt, either in whole or in part, against the grantee of the mortgagor does not rest upon any contract of the grantee with him or with the mortgagor for his benefit." The purchaser of land subject to mortgage, who assumes and agrees to pay the mortgage debt, becomes, as between himself and his vendor, the principal debtor, and the liability of the vendor as between the parties is that of surety. In equity, a creditor may have the benefit of all collateral obligations for the payment of the debt which a person standing in the relation of a surety for others holds for his indemnity. It is in the application of this principle that decrees for deficiency in foreclosure suits have been made against subsequent purchasers who have assumed the payment of the mortgage debt, and thereby become principal debtors as between themselves and their grantors. But the plaintiff here has not brought her action in this form and with this end in view. Her action is not for equitable subrogation to get the benefit of a security held by her debtor, Bostic. She alleges in her complaint that she owns the assumption and promise made by Ray to Bostic and Suttle, and seeks to enforce it against Ray in her own right at law, without any prayer for equitable relief or stating any element of equity in her complaint.

She cannot therefore have equitable relief, because she has prayed for none.

We will now take up and discuss the proposition of the plaintiff that she can recover upon the assignment of the assumption and guaranty of the defendant, made to Bostic and Suttle, and by them transferred to her. The question for decision then is, Is the assumption and guaranty assignable? If it is, then the plaintiff can maintain her action; if it is not, she must fail. Section 55, C. C. P., which is Section 177 of *The Code*, with a slight alteration, was almost a literal transcript of Sections 111 and 112 of the New York Code when our Code of Civil Procedure was adopted. Those sections of the New York Code produced so much litigation and involved the courts in so great perplexities in their attempts to arrive at some uniformity of decision in construing them, that the legislature of that state, to declare with some degree of certainty what things might be the subject of assignment, repealed them and enacted in their place (now Section 1910 of the New York Code) the following provision: "Any claim or demand can be transferred except in one of the following cases: 1. When it is to recover damages for personal injury or for a breach of promise to marry. 2. When it is founded on a grant which is made void by a statute of the state, or upon a claim to or interest in real property, a grant of which by the transfer would be void by such a statute. 3. Where a transfer thereof is expressly prohibited by a statute of the state, or of the United States, or would contravene public policy." In New York it might be that under their statute an agreement and assumption like the one sued on in this action would be the subject of assignment. But in North Carolina we have no such statute. Section 177 of *The Code* contains the law by which we are to be governed in arriv-

ing at a conclusion.   We have no decisions of this Court upon that Section of *The Code* bearing directly on the particular point raised in this case, nor any general rule of construction of this statute by which we might be aided in our investigations. In *Petty* v. *Rousseau*, 94 N. C., 355, it would seem that something like a general rule had been laid down, but ASHE, J., who wrote the opinion in that case, was inadvertent to the change which had been made in the New York Code by the repeal of Sections 111 and 112 thereof, and the adoption of Section 1910, which we have quoted in full above, in their places, and quoted Section 1910 in full as being the annotations of Mr. BLISS upon Sections 111 and 112.   He quoted by mistake the amended law of New York, instead of, as he supposed, the construction which Mr. BLISS put upon Sections 111 and 112, which had been repealed.   So, the opinion in that case does not aid us, for it was really based on the then statutory law of New York.   Upon a merely cursory examination into the matter it will appear that many inconsistencies and incongruities must attend the assignment of an agreement like the one before us.   If an assignee can make no possible use of the thing assigned to him, the assignment is a vain thing.   If the courts would not and could not entertain a suit at the hands of an assignee, because of the uselessness to him in any event of the thing transferred, how can it be said that such a thing is assignable ?   The law could not say that a matter, even though based on contract, could be assigned if it could not possibly be of use to the assignee.   The law means, when it says that a thing is assignable, that the assignment carries with it rights of property, and that those rights can be enforced in the courts.   It would seem to be clear, too, that a thing, to be assignable, must be the subject of

assignment generally—to every one—and not be confined in its application to particular persons.   It cannot be that the same subject matter of assignment can be assigned to one person and not to another person.   It is difficult to understand how the subject of assignment can be limited in its transference to particular persons—good if assigned to some persons, and of no avail if assigned to others. Now what use could a stranger make of the agreement sued on in this case, if it had been assigned to him instead of to the plaintiff?   Suppose a stranger was the owner by assignment of this agreement and had brought suit upon it, what would his complaint be, and what kind of a judgment would he pray for?   The complaint would have to state that the defendant had promised to pay a note due, not to himself but to Mrs. W., and that he was the owner by assignment from Bostic and Suttle of the defendant's promise to do so.   He could not demand judgment that the money be paid to him, because his complaint stated that it was due to Mrs. W.   He could not ask that the money be paid to Mrs. W., for he could not prosecute an action in her name, nor have any judgment pronounced for or against her in a suit where she was not a party.   In truth, the court could give no judgment.   So, looking at the matter in all its bearings, we are constrained to say that the assumption and promise sued on in this action is entirely personal to Bostic and Suttle, with whom it was made, and is not assignable, although it would pass to the personal representative of Bostic in case of his death, and that the plaintiff cannot maintain this action upon it. His Honor erred in overruling the demurrer of the defendant.

                                        Error.